MARY A. JONES *v.* MANSFIELD TRAINING SCHOOL
(14298)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, Js.

Argued November 6, 1991—decision released January 7, 1992

*Robert M. Fitzgerald,* for the appellant (plaintiff).

*Michael J. Belzer,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellee (defendant).

PETERS, C. J. The dispositive issue in this administrative appeal is whether injured state employees may elect to calculate their benefits in accordance with the traditional workers' compensation benefits established by General Statutes § 31-307 rather than by the special duty benefits established by General Statutes § 5-142 (a).[1] A workers' compensation commissioner

---

[1] General Statutes (Rev. to 1991) § 31-307 provides in relevant part: "COMPENSATION FOR TOTAL INCAPACITY. If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury; but the compensation shall in no case be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred . . . . No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided

determined that the plaintiff, Mary A. Jones (claimant), had suffered a compensable work related injury in the course of her state duty that would have entitled her to receive her full salary under § 5-142 (a). Because an alternate calculation of her benefits for her temporary total incapacity in accordance with § 31-307 would allow her a substantially higher compensation rate, the commissioner held that she could recover this larger amount. On appeal by the defendant, Mansfield Training School (state), the compensation review division concluded, to the contrary, that the remedy provided by § 5-142 (a) was exclusive and precluded the recovery of any other workers' compensation benefits. The

such minimum payment shall not exceed eighty per cent of the employee's average weekly wage, as determined under section 31-310; and such compensation shall not continue longer than the period of total incapacity. . . ." This statute was amended by Public Acts 1991, No. 91-32, §§ 23, 41, effective July 1, 1991, and by No. 91-339, §§ 26, 55, effective October 1, 1991.

General Statutes (Rev. to 1991) § 5-142 provides in relevant part: "DIS-ABILITY COMPENSATION. (a) If any member of . . . any correctional institution . . . or any employee of any juvenile detention home . . . sustains any injury while making an arrest or in the actual performance of such police duties or guard duties or fire duties or inspection duties, or . . . while attending or restraining an inmate of any such institution or as a result of being assaulted in the performance of his duty, the state shall pay all necessary medical and hospital expenses resulting from such injury. If total incapacity results from such injury, such person shall be removed from the active payroll the first day of incapacity, exclusive of the day of injury, and placed on an inactive payroll. He shall continue to receive the full salary which he was receiving at the time of injury subject to all salary benefits of active employees, including annual increments, and all salary adjustments, including salary deductions, required in the case of active employees, for a period of two hundred sixty weeks from the date of the beginning of such incapacity. Thereafter, such person shall be removed from the payroll and shall receive compensation at the rate of fifty per cent of the salary which he was receiving at the expiration of said two hundred sixty weeks so long as he remains so disabled . . . . All other provisions of the workers' compensation law not inconsistent herewith, including the specific indemnities and provisions for hearing and appeal, shall be available to any such state employee or the dependents of such a deceased employee. . . ." This statute was amended, effective October 1, 1991, by Public Acts 1991, No. 91-339, §§ 40, 55.

claimant appealed to the Appellate Court, and we transferred her appeal to this court in accordance with Practice Book § 4023. We reverse.

The facts were stipulated. As a result of an attack by one of the residents of the Mansfield Training School, the claimant, an employee of the school, sustained an injury to her right knee and left thumb that left her temporarily totally incapacitated. If calculated in accordance with § 5-142 (a), her weekly compensation rate would be $310.15, because that was her full weekly salary at the time of her injury. If calculated in accordance with § 31-307, her weekly compensation rate would be $462.86, because she had performed substantial overtime work increasing her average weekly earnings to $694.26 during the twenty-six weeks prior to her injury.[2]

The claimant appeals from the determination of the compensation review division limiting her compensation benefit to that established by § 5-142 (a). Her principal argument is that she has a statutory right to elect benefits pursuant to § 31-307.[3] Alternatively, she con-

[2] Under General Statutes (Rev. to 1991) § 31-310, for the purposes of General Statutes § 31-307, "the average weekly wage shall be ascertained by dividing the total wages received by the injured worker from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured, by the number of calendar weeks during which, or any portion of which, such worker was actually employed by such employer . . . ." This statute was amended, effective July 1, 1991, by Public Acts 1991, No. 91-32, §§ 28, 41, and No. 91-339, §§ 30, 55.

[3] The claimant's contention that she has a statutory right to election of remedies is buttressed by her assertion that a contrary construction of General Statutes § 5-142 (a) would violate her constitutional rights to equal protection of the laws under the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution. Although the claimant briefed this issue in response to the state's appeal to the compensation review division, the review division did not address it. The record does not indicate whether the claimant actively pursued her constitutional claim before the review division. In view of our disposition of the claimant's appeal, we need not decide whether this issue is properly before us.

tends that her § 5-142 (a) benefits should be construed to include overtime income. Because we accept the first of these arguments, we do not reach the second one.

As the compensation review division noted in its opinion, our legislature enacted the predecessor statute to § 5-142 (a) in 1939 in order to provide enhanced benefits by way of disability compensation for employees injured while engaged in special state service.[4] The class of employees eligible for these benefits is those who "in the daily course of performing their duties, work in an atmosphere sometimes charged with emotion and stress, and face the possibility of confrontations with inmates, patients or arrestees, which confrontations often result in violence." *Lucarelli* v. *State,* 16 Conn. App. 65, 69, 546 A.2d 940 (1988). If injured under the circumstances prescribed in the statute, this class of state employees is entitled to disability compensation based upon the employee's full salary, rather than upon a percentage of his or her weekly earnings, the normal workers' compensation standard. Ordinarily, therefore, the remedy provided by § 5-142 (a) will be advantageous to the injured employee. The legislature, in its various reenactments of General Statutes (Sup. 1939) § 78e, has steadfastly manifested its intention to make these benefits a generous source of compensation for its designated beneficiaries.

---

[4] As enacted in 1939, General Statutes § 78e provided in relevant part: "DISABILITY COMPENSATION TO EMPLOYEES OF STATE POLICE AND STATE INSTITUTIONS. Each employee of the state police department or of any correctional or penal institution or of any institution for the care of persons afflicted with a mental disorder or a mental defect, in case of injury sustained while making an arrest or in pursuit of such purpose, or while attending or restraining an inmate of any such institution or sustained as a result of being assaulted while in the performance of his duty, shall not be removed from the payroll, except that, in the event of total disability, he shall be continued on the payroll for two hundred and sixty weeks and thereafter shall receive compensation at the rate of one-half the salary he was receiving at the time of the injury . . . ."

The issue before us is whether the legislature intended to make the special benefit conferred by § 5-142 (a) the exclusive remedy for an injured worker even in the unusual situation in which an alternate calculation of workers' compensation benefits would provide greater financial relief. "In order to ascertain and give effect to the apparent intent of the legislature, we must examine the language of the statute in light of the purpose that it was designed to achieve. *Mahoney* v. *Lensink,* 213 Conn. 548, 563, 569 A.2d 518 (1990); *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54–55, 523 A.2d 477 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986)." *Szudora* v. *Fairfield,* 214 Conn. 552, 557, 573 A.2d 1 (1990). In implementing the purpose of the statute, "[w]e must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck* v. *Jacquemin,* 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable. *State* v. *Uretek, Inc.,* 207 Conn. 706, 719, 543 A.2d 709 (1988); *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985)." *Turner* v. *Turner,* 219 Conn. 703, 713, 595 A.2d 297 (1991); *Fairfield Plumbing & Heating Supply Corporation* v. *Kosa,* 220 Conn. 643, 650–51, 600 A.2d 1 (1991).

The state points to three statutory provisions as indicative of a legislative intent to require injured employees to look to § 5-142 (a) in lieu of all other possible workers' compensation benefits. Section 5-142 (a) itself states that a covered employee who has become totally incapacitated "*shall* continue to receive the full salary which he was receiving at the time of injury . . . ." (Emphasis added.) The subsection also states: "All other provisions of the workers' compensation law *not inconsistent herewith,* including the specific indem-

nities and provisions for hearing and appeal, shall be available to any such state employee . . . ." (Emphasis added.) Finally, General Statutes (Rev. to 1991) § 5-143 states: "Each state employee who sustains an injury arising out of and in the course of his employment, *except as provided in section 5-142,* shall be paid compensation in accordance with the provisions of the workers' compensation act . . . ." (Emphasis added.)

We are not persuaded that the legislature's use of the word "shall" demonstrates that the salary benefit provided by § 5-142 (a) precludes an injured worker from recourse to another workers' compensation remedy. "[I]n the interpretation of statutes the word 'shall' may have a meaning that is directory rather than mandatory. *Fidelity Trust Co.* v. *BVD Associates,* 196 Conn. 270, 278, 492 A.2d 180 (1985). The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345 (1951). If it is a matter of substance, the statutory provision is mandatory. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591 (1963). If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789 (1956). Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75 (1969). *Fidelity Trust Co.* v. *BVD Associates,* supra, 278." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki,*

219 Conn. 473, 480–81, 595 A.2d 819 (1991); see also *Beccia* v. *Waterbury,* 185 Conn. 445, 460–61, 441 A.2d 131 (1981). The essence of § 5-142 (a) is to provide the enhanced benefit of a full salary to a state employee who has been injured within its purview. Without more, the legislature should not be deemed to have made that right exclusive.

The state buttresses its argument for exclusivity by pointing to the legislature's express preservation, for injured § 5-142 (a) state employees, of only those "other provisions of the workers' compensation law not inconsistent herewith, including the specific indemnities and provisions for hearing and appeal . . . ." This proviso fails, however, to define what the legislature deems "inconsistent." The possibility that access to "specific indemnities" may afford further relief to injured state employees; see General Statutes § 31-308 (b); suggests that the legislature recognized that payment of a salary might not make an injured employee whole. In light of that recognition, we are not persuaded that the legislature, in assigning priority to § 5-142 (a) entitlements, manifested its intent to preclude an employee from recourse to § 31-307.

The same ambiguity inheres in the clause in § 5-143 entitling injured state employees to workers' compensation benefits "except as provided in section 5-142." Because this statute's predecessor was enacted conjointly with the predecessor of § 5-142; see General Statutes (Sup. 1939) §§ 79e and 78e; and hence relates to the same area of the law, the two statutes necessarily must be interpreted as a unitary whole. "We are obligated . . . to read statutes together when they relate to the same subject matter. *Felia* v. *Westport,* 214 Conn. 181, 187, 571 A.2d 89 (1990); *In re Ralph M.,* 211 Conn. 289, 304–305, 559 A.2d 179 (1989)." *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council,* 215 Conn. 474, 482–83, 576 A.2d 510 (1990);

see also *State* v. *Carroll*, 97 Conn. 598, 604, 117 A. 694 (1922): The "except" clause in § 5-143 therefore provides no specific enlightenment about legislative intent other than that contained in § 5-142 (a).

What is notable about the text of both §§ 5-142 (a) and 5-143 is that the legislature has repeatedly had the opportunity expressly to designate § 5-142 (a) benefits as an exclusive remedy. It has not chosen to do so. It did not use the express language of "exclusive remedy," which appears elsewhere in our workers' compensation law, for example in General Statutes § 31-293a, which provides that a right to workers' compensation benefits for an injury caused by a negligent fellow worker "shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1." See also General Statutes §§ 33-373 (f), 38a-148 (b). It did not, in the alternative, provide that, for state workers covered by § 5-142 (a), the state would *not* be otherwise liable to pay benefits. A similar formulation, in General Statutes § 31-284 (a),[5] has been uniformly construed to make workers' compensation the exclusive remedy and thereby to insulate employers from suits

[5] General Statutes (Rev. to 1991) § 31-284 (a) provides in relevant part: "BASIC RIGHTS AND LIABILITIES. CIVIL ACTION TO ENJOIN NONCOMPLYING EMPLOYER FROM ENTERING EMPLOYMENT CONTRACTS. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication." This statute was amended by Public Acts 1991, No. 91-32, §§ 7, 41, effective July 1, 1991, and No. 91-339, §§ 11, 55, effective January 1, 1992.

for damages by their employees for job related death or injury. See *Sgueglia* v. *Milne Construction Co.,* 212 Conn. 427, 433, 562 A.2d 505 (1989).

Our reluctance to infer exclusivity of remedy from the ambiguous provisions of a remedial statute finds support, furthermore, in another case in which we concluded that workers are entitled to choose between different statutory measures providing compensation for on-the-job injuries. In *Bakelaar* v. *West Haven,* 193 Conn. 59, 66–69, 475 A.2d 283 (1984), we concluded that a municipal firefighter or police officer suffering from hypertension or heart disease could elect whether to proceed under General Statutes § 7-433c, which specifically addresses such a claim for benefits, or under chapter 568, the traditional workers' compensation law. We there rejected the contention of the defendant city that the workers' compensation statutes furnished the exclusive remedy for injuries arising out of and in the course of employment, even if the injuries claimed were compensable under § 7-433c. We concluded that the defendant city's contention was inconsistent with the beneficial purpose of § 7-433c to provide enhanced eligibility for benefits to firefighters and police officers, "[n]otwithstanding any provision of chapter 568."

Concededly, the governing statutes in *Bakelaar* were clearer than they are in this case. We are nonetheless persuaded that the legislature did not intend, sub silentio, to convert the special benefits conferred by § 5-142 (a) into an obstacle to the greater recovery under § 31-307 to which the claimant would otherwise be entitled because of her long record of overtime work. We may presume that the claimant worked overtime because such overtime service enabled her to increase her take-home pay and because the state, as her employer, determined that her overtime work benefitted the operations of the Mansfield Training School. Having acquiesced in this arrangement, the state would

require strong justification now to deprive the claimant of benefits that she has earned. We conclude that the legislature has manifested no intent to visit such an injustice on this claimant.

The judgment is reversed and the case is remanded to the compensation review division with direction to reinstate the finding and award of the compensation commissioner.

In this opinion SHEA and CALLAHAN, Js., concurred.

COVELLO, J., concurring. While I concur in the result, I am unable to agree with that portion of the majority opinion that discusses the circumstances under which the legislature's use of the word "shall" in a statute is considered directory, as opposed to mandatory. As written, the opinion implies that we have concluded that the word "shall" in General Statutes (Rev. to 1991) § 5-142 is directory only and is not mandatory. I do not believe this is so because the sentence in which it appears clearly relates to a matter of substance.

"In determining whether a statute is mandatory or merely directory, the most satisfactory and conclusive test is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words whether it relates to [a] matter of substance or to [a] matter of convenience." *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345 (1951). Section 5-142 is entitled: "Disability compensation." The sentence in issue states: "He shall continue to receive the full salary which he was receiving . . . ." This is the sentence that provides the disability compensation. It is the heart or linchpin of the statute. It is "the essence of the thing to be accomplished." *International Brotherhood of Teamsters* v. *Shapiro,* supra.

It is not necessary to conclude that "shall" is directory in this instance in order to arrive at the conclusion that the state employee has a choice of benefits between General Statutes (Rev. to 1991) § 5-142 and § 31-307. General Statutes (Rev. to 1991) § 5-143 states: "Each state employee who sustains an injury arising out of and in the course of his employment, *except as provided in section 5-142,* shall be paid compensation in accordance with the provisions of the workers' compensation act [i.e., § 31-307] . . . ." (Emphasis added.) Thus, within this context, § 5-143 says two things. First, an injured state employee who otherwise qualifies is to receive § 31-307 benefits. Second, one must examine § 5-142 to see what exceptions § 5-143 is referring to when it states: "except as provided in section 5-142."

Section 5-142 also says two relevant things. First, it states that a qualifying employee "shall continue to receive the full salary which he was receiving at the time of injury . . . ." Second, it provides: "All other provisions of the workers' compensation law [including § 31-307,] *not inconsistent herewith* . . . shall be available to any such state employee . . . ." (Emphasis added.) Thus, an injured employee has the option to receive as compensation, either full salary or any other benefits authorized by the workers' compensation law.

Section 31-307 states that "there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury." As long as this calculation does not result in a benefit that is less than the employee's full salary, there is nothing in the language of § 31-307 that is inconsistent with the mandate of § 5-142 that the employee "receive the full salary which he was receiving at the time of injury." Since the § 31-307 calculation in this instance results in a bene-

fit that is larger than the "full salary" provided in § 5-142, the § 31-307 benefits are not inconsistent with § 5-142. Therefore, pursuant to the mandate of § 5-142 that "[a]ll other provisions of the workers' compensation law not inconsistent herewith . . . shall be available," I would conclude that the employee, at her option, could select § 31-307 benefits in lieu of the "full salary" provisions of § 5-142.

BERDON, J., dissenting. The majority, through statutory construction, grants certain state employees an election to receive for total incapacity either their "full salary" under General Statutes § 5-142 (a)[1] or "sixty-six and two-thirds per cent of [their] average weekly earnings" under General Statutes § 31-307[2] of the Workers' Compensation Act.[3] In doing so, the majority ignores the cardinal rule of statutory construction that "[w]hen the language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction." *Cilley* v. *Lamphere*, 206 Conn. 6, 9–10, 535 A.2d 1305 (1988).

Section 5-142 (a) provides in pertinent part that if certain state employees sustain an injury arising out of and in the course of specific employment and total incapacity results, the injured employee "*shall* continue to receive the full salary which he was receiving at the time of injury subject to all salary benefits of active

---

[1] General Statutes § 5-142 was recently amended by Public Acts 1991, No. 91-339, §§ 40, 55, which added the requirement that the injury be the "direct result of the special hazards inherent in such duties." See footnote 1 of the majority opinion for the pertinent parts of the text of § 5-142 (a) prior to the amendment, and which governs this case.

[2] General Statutes § 31-307 was recently amended by Public Acts 1991, No. 91-339, §§ 26, 55, which increased the award for total incapacity to 80 percent of the average weekly wage, but reduced the same to take into account federal income taxes and other adjustments. See footnote 1 of the majority opinion for the pertinent parts of the text of § 31-307 prior to amendment.

[3] General Statutes § 31-275 et seq.

employees, including annual increments, and all salary adjustments, including salary deductions, required in the case of active employees, for a period of two hundred sixty weeks from the date of the beginning of such incapacity. Thereafter, such person *shall* be removed from the payroll and *shall* receive compensation at the rate of fifty per cent of the salary which he was receiving at the expiration of said two hundred sixty weeks so long as he remains so disabled . . . . All other provisions of the workers' compensation law *not inconsistent herewith,* including the specific indemnities and provisions for hearing and appeal, shall be available to any such state employee or the dependents of such a deceased employee. . . ." (Emphasis added.) General Statutes (Rev. to 1991) § 5-143, the companion to § 5-142, provides in relevant part that "[e]ach state employee who sustains an injury arising out of and in the course of his employment, *except as provided in section 5-142,* shall be paid compensation in accordance with the provisions of the workers' compensation act . . . . " (Emphasis added.) Simply put, the Workers' Compensation Act applies to all state employees, except certain designated employees identified in § 5-142 (a) who become totally incapacitated during the course of performing the specified duties of such employment. The employees covered under § 5-142 (a) continue on the payroll and receive "full salary" for five years thereby making them ineligible for weekly benefits under the Workers' Compensation Act. There is no provision for an election, and the reading of one into the clear and unambiguous language of the statute just won't wash.

There is no dispute that, in the present case, the claimant falls within a category of those state employees covered by § 5-142 (a). To reach its result that the claimant may elect coverage under either § 5-142 (a) or § 31-307, the majority construes the word "shall"

as being "directory" and not "mandatory" in the sentence of § 5-142 that those covered state employees "shall continue to receive the full salary . . . ." Furthermore, the majority chooses to ignore the "shalls" in that part of the statute providing that after five years, such person "shall be removed from the payroll and shall receive compensation at the rate of fifty per cent of the salary . . . ." This language makes clear that for those specific state employees who are covered by § 5-142 (a), the legislature established, outside the scope of the Workers' Compensation Act, a separate, distinct and exclusive statutory scheme for the weekly compensation for total incapacity.

In the concurring opinion, it is stated that the word "shall" pertains to a matter of substance and as a result is mandatory. I agree; this time, "shall" means "shall." The concurring opinion, however, seeks to reach the majority's result by pointing out that § 5-142 (a) states that all other provisions of the Workers' Compensation Act, including § 31-307, shall be available to any state employee when "not inconsistent" with § 5-142 (a). The concurring opinion claims that the statutes are not inconsistent in this case simply because the claimant will receive a larger benefit under § 31-307 than she would have received under § 5-142 (a). The simple answer is that the right to receive "full salary" as a state employee is inconsistent with the right to receive compensation based on "sixty-six and two-thirds per cent of his average weekly earnings" under the Workers' Compensation Act. Put another way, the fact that the claimant will receive more compensation under § 31-307 in this particular case does not make the language of that statute consistent with § 5-142 (a). Matters are inconsistent if they are "[c]ontradictory of one another." Ballentine's Law Dictionary (3d Ed. 1969).

The majority further ignores the plain language of § 5-143, which provides that state employees are to be paid compensation in accordance with the provisions of the Workers' Compensation Act "except as provided in section 5-142." They claim that this statute is ambiguous merely because it was originally enacted "conjointly with § 5-142." Courts cannot "torture words to import ambiguity where the ordinary meaning leaves no room for it . . . ." *Heffernan* v. *Slapin*, 182 Conn. 40, 46, 438 A.2d 1 (1980).

Finally, for at least two reasons, there is no basis for the majority's conclusion that the legislature intended an election because it failed to amend § 5-142 expressly to describe it as an "exclusive remedy." First, there has never been a prior decision, either administrative or judicial, before the present one rendered by the majority that construes the unequivocal language of § 5-142 (a) as providing for an election. The statute, on its face, clearly does not import such a construction. Second, the legislature recently adopted Public Acts 1991, No. 91-339,[4] amending § 5-142 (a) when it already had the benefit of the compensation review division's decision in the present case, which *explicitly* held there was no right to an election.[5] It is presumed that the legislature was aware of this interpretation of § 5-142 when it amended the statute for other reasons and its failure to provide for an election was a validation of the compensation review division's interpretation.

---

[4] See footnote 1, supra.

[5] The workers' compensation review division found that "Sec. 5-142 (a) after the sentences creating full salary benefits contains the following: 'All other provisions of the workers' compensation law not inconsistent herewith, including the specific indemnities and provisions for hearing and appeal shall be available to any such state employee or the dependents of such deceased employee.' We think Sec. 31-307 defining compensation as equal to sixty-six and two-thirds per cent of average weekly earnings is inconsistent with the full salary definition of benefits provided in Sec. 5-142 (a). We therefore conclude that the claimant['s] election of benefits argument cannot apply."

"[T]he inference of legislative concurrence with the agency's interpretation [is] to be drawn from legislative silence concerning that interpretation, especially where the legislature makes unrelated amendments in the same statute." *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 176 Conn. 191, 198, 405 A.2d 638 (1978); see *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 539, 569 A.2d 40, cert. denied,     U.S.    , 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990); *McDonough* v. *Connecticut Bank & Trust Co.,* 204 Conn. 104, 119, 527 A.2d 664 (1987).

I am mindful of the remedial purposes of the Workers' Compensation Act and " 'that it should be broadly construed to accomplish its humanitarian purposes.' " *Ash* v. *New Milford,* 207 Conn. 665, 672, 541 A.2d 1233 (1988). Nevertheless, the legislature in adopting § 5-142 (a), provided state employees falling within the ambit of the statute a generous compensation package. It is reasonable to believe that the legislature did not accidentally omit language that would allow for an election between "full salary" and "average weekly earnings." If the statute needs repairing, it is for the legislature to do and not this court. " 'We are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained.' . . . Nor can we engraft language not clearly intended by its enactment onto legislation." *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.,* 207 Conn. 639, 645, 541 A.2d 869 (1988), quoting *Schurman* v. *Schurman,* 188 Conn. 268, 273, 449 A.2d 169 (1982).

Although this court has the final word on the interpretation of our state statutes, there is a "higher authority"—that is, the constitution of the state of Connecticut. Article second of the Connecticut constitution provides in part: "The powers of government shall be

divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." By placing a construction on this statute that is contrary to its plain and unambiguous text, the majority encroaches on that which is solely reserved to the legislative branch of our government. "In the field of legislation, the legislature is supreme. Courts must apply legislative enactments according to their plain terms." *State* v. *Malm,* 143 Conn. 462, 467, 123 A.2d 276 (1956).

I would affirm the decision of the workers' compensation review division.[6] Accordingly, I respectfully dissent.

---

[6] The claimant also argues that the "full salary" should also include "average weekly wage." There is no basis for the argument. The plaintiff concedes that the commissioner has, without exception, calculated the "full salary" under General Statutes § 5-142 without including overtime. Great deference must be shown to the statutory construction given by the agency. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 173, 479 A.2d 1191 (1984). Likewise, the claimant's equal protection claim is without merit. The standard of review in this case is that of rational relationship—that is, whether the classification bears a rational relationship to a legitimate state interest. *Faraci* v. *Connecticut Light & Power Co.,* 211 Conn. 166, 168–69, 558 A.2d 234 (1987). The claimant concedes that under this minimal level of review the statute passes constitutional muster. Her complaint is that the result does not work out well for her. When, however, "the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Eielson* v. *Parker,* 179 Conn. 552, 565, 427 A.2d 814 (1988).