[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
A person whose license is suspended is aggrieved according to the Uniform Administrative Procedure Act (UAPA), 4-166
through 4-189 "in that a specific, personal and legal interest, his license to drive, has been adversely affected." Tarascio v.Muzio, 40 Conn. Sup. 505, 507, 515 A.2d 1082 (1086, Vasington, J.); see also Etheridge v. Goldberg. 8 CSCR 235, 236 (January 25, 1993, Berger, J.); Marshall v. DelPonte, 42 Conn. Sup. 602,606, 634 A.2d 918 (1991, Clark, J.), aff'd, 27 Conn. App. 346,606 A.2d 716 (1992). "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section." General Statutes § 4-183(a). The court finds that the plaintiff is aggrieved.
General Statutes § 4-183(c) provides that a person may appeal a final decision of an agency within forty-five days after the final decision is mailed. In the present case, the final decision was rendered on January 30, 1993. The plaintiff filed this appeal on February 23, 1993. The defendant was served on February 25, 1993. Consequently, the plaintiff has filed this action within the time limit prescribed by General Statutes § 4-183(c).
The court's review of the hearing officer's decision is restricted in scope to the determination of "`whether, in light of the evidence, the [hearing officer] has acted unreasonably, arbitrarily, illegally, or in the abuse of [his] discretion.'" (Citation omitted.) Buckley v. Muzio, 200 Conn. 1, 3,509 A.2d 489 (1986). The plaintiff bears the burden of proving that the hearing officer abused his discretion or acted contrary to law.Demma v. Commissioner of Motor Vehicles, 165 Conn. 15, 16-17,327 A.2d 569 (1973). CT Page 5543
The issue of the credibility of the witnesses is solely within the province of the hearing officer. Lawrence v.Kozlowski, 171 Conn. 705, 708, 372 A.2d 110, cert. denied,431 U.S. 969 (1976). The court may not substitute its judgment for the judgment of the hearing officer. Buckley v. Muzio, supra,200 Conn. 3.
The plaintiff argues that the decision of the hearing officer that the plaintiff refused to take a chemical test was legally erroneous as Deely was not statutorily authorized to require the plaintiff to take a urine test after the plaintiff had already agreed to take a breath test. In addition, the plaintiff argues that the agency decision that the plaintiff refused to submit to a chemical test was erroneous in view of the reliable, probative and substantial evidence on the record.
The defendant argues that the hearing officer correctly found that Deely could require a urine test when the breathalyzer machine was broken. In addition, the defendant argues that the evidence supports a finding that the plaintiff refused to take a chemical test.
"Statutes are to be construed to give effect to the apparent intention of the lawmaking body . . . and where legislative intent is clear, there is no room for statutory construction. When, however, we are confronted with ambiguity in a statute, we look to "`its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment'" to determine the legislative intent." (Citations omitted.)Nationwide Mutual Ins. Co. v. Pasion, 219 Conn. 764, 768-69,594 A.2d 468 (1991). The court must "`construe a statute in a manner that will not thwart its intended purpose. . . .'" (Citation omitted.) Scrapchansky v. Plainfield, 226 Conn. 446, 453,627 A.2d 1329 (1993). "`If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable.'" (Citations omitted.) Jones v.Mansfield Training School, 220 Conn. 721, 726, 601 A.2d 507
(1992).
 (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine.
(b) If any such person, having been placed under CT Page 5544 arrest . . . for operating a motor vehicle while under the influence of intoxicating liquor . . . and, thereafter, . . . having been requested to submit to a blood, breath or urine test at the option of the police officer . . . refuses to submit to the designated test, the test shall not be given; provided if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken.
(Emphasis added.) General Statutes § 14-227b.
General Statutes § 14-227b permits the officer to choose any of the chemical tests, but a limited exception allows the accused to request a test other than a blood test. This reading is supported by section 14-227b-4(a) of the Regulations of Connecticut State Agencies that provides that "[t]he police officer has the option of selecting for the chemical analysis the blood, breath or urine test, except that if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test for the chemical analysis."
This reading is consistent with the legislative intent. Public Act 83-534 changed the implied consent statute in order to allow the police officer rather than the accused to designate the test. 26 S. Proc., Pt. 13, 1983 Sess., p. 4425. Senator Owens stated that this amendment gives the police the right "to select the first chemical test that's to be used, the one that they're comfortable with, the one that they've worked with be it blood, breath or urine." 26 S.Proc., Pt. 13, 1983 Sess., pp. 4425-26. The word "first" refers to the fact that the police may choose the first test administered, and the accused may then request a second test. See 26 H.R. Proc., Pt. 19, 1983 Sess., p. 6677.
The purpose of the implied consent law "is to get drunk drivers off the road." 26 H.R. Proc., Pt. 19, 1983 Sess., p. 6711. The 1983 amendments were enacted in order to plug loopholes that allowed drunk drivers to continue driving. 26 S. Proc., Pt. 13, 1983 Sess., pp. 4421-22.
A reading of the statute that bars a police officer from administering a urine test after finding out that the breathalyzer machine is broken contravenes the purpose of the implied CT Page 5545 consent laws. Furthermore, allowing the plaintiff to refuse the urine test in this situation creates a loophole in the law that contravenes the legislative intention to tighten loopholes with the 1983 amendments, which specifically changed the law in order to allow the police to choose the test to be administered.
Therefore, the interpretation of the statute which is consistent with the purpose of the legislation should be adopted by the court. Accordingly, the hearing officer did not misapply the law when he found that the police officer could require that the plaintiff take a urine test after the plaintiff consented to a breath test.
"If a person refuses to take either the blood test or the test designated by the police officer in lieu thereof, no chemical analysis or test shall be given, and the person shall be deemed to have refused to submit to a chemical analysis." Regs., Conn. State Agencies § 14-227b-4(b). "A person shall be deemed to have refused to submit to a chemical analysis if he remains silent or does not otherwise communicate his assent after being requested to take a blood, breath or urine test under circumstances where a response may reasonably be expected." Regs., Conn. State Agencies § 14-227b-5; LaClair v.Commissioner, Dept. of Motor Vehicles, 5 Conn. L. Rptr. 805, 806 (January 10, 1992, Clifford, J.). The inability to urinate is distinguished from cases involving persons who were unable to perform a breath test as an accused "unquestionably could have completed [a urine] test if he had only waited until he had to urinate again." Baker v. Commissioner, Dept. of Motor Vehicles, Superior Court, judicial district of Windham at Putnam, Docket No. 043465 (January 7, 1993, Damiani, J.).
Deely testified at the department hearing that the plaintiff said that he would not take a urine test. (ROR, Item 2, p. 19.) Deely also testified that he asked the plaintiff a couple of times to take a urine test and that he told the plaintiff that he would administer the test two times with a thirty minute interval between the tests. (ROR, Item 2, pp. 19-20.) The plaintiff testified at the department hearing that he stated to Deely that he did not have to urinate and that he was not given any additional opportunities to take the test. (ROR, Item 2, p. 25.)
In determining whether "the agency made an incorrect decision based on the evidence before it, the court applies the CT Page 5546 substantial evidence rule, which allows reversal of a decision only if the conclusion reached was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." Dorman v. DelPonte, 41 Conn. Sup. 437, 441,582 A.2d 473 (1990, Fuller, J.), citing Persico v. Maher, 191 Conn. 384,409, 465 A.2d 308 (1983); see also Lawrence v. Kozlowski, supra,171 Conn. 713. "The credibility of witnesses is within the province of the administrative agency, and under the substantial evidence rule, if there is evidence that reasonably supports the commissioner's decision, that decision must be upheld." Dormanv. DelPonte, supra, citing Persico v. Maher, supra.
The evidence on the record shows conflicting testimony between Deely and the plaintiff. A determination of whether the plaintiff refused the urine test is a question of the credibility of the witnesses which is within the province of the agency. Accordingly, the plaintiff's appeal is dismissed.
SYLVESTER, J.